**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) NON-ARTERITIC ISCHEMIC OPTIC NEUROPATHY PRODUCTS LIABILITY LITIGATION | MDL NO. 3163<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| DANIEL G. WEBB,<br><br>Plaintiff,<br>v.<br><br>ELI LILLY AND COMPANY;<br>LILLY USA, LLC, NOVO NORDISK INC.,<br>NOVO NORDISK A/S,<br>:<br>Defendants. | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:26-cv-8589 |

## COMPLAINT AND JURY DEMAND

### DIRECT FILING ORDER AND VENUE

Plaintiff, DANIEL G. WEBB, files this Complaint pursuant to the Direct Filing Order and is to be bound by the rights, protections, and privileges, and obligations of the Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the Northern District of Illinois as Plaintiff's venue ("Original Venue"). Plaintiff makes this selection based upon one (or more) of the following factors:

X Plaintiff currently resides in Alsip, Cook County, Illinois.

X Plaintiff purchased and used Defendant(s)' products in Alsip, Cook County, Illinois.

__ The Original Venue is a judicial district in which Defendant Novo Nordisk, Inc. and/or Novo Nordisk A/S resides, Eli Lilly and Company. Lilly USA, LLC., and all Defendants are residents of the State in which the district is located (28 USC § 1391(b)(1)).

X The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically (28 USC § 1391(b)(2)).

__ There is no district in which an action may otherwise be brought under 28 USC § 1391, and the Original Venue is a judicial district in which Defendant Novo Nordisk, Inc. and/or Novo Nordisk A/S is subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)).

Other reason (please explain):_____________________________________________.

Plaintiff, DANIEL G. WEBB, by and through the undersigned counsel, brings this complaint against Defendants, ELI LILLY AND COMPANY; LILLY USA, LLC; NOVO NORDISK, INC.; AND NOVO NORDISK A/S; (hereinafter collectively referred to as "Defendants"), for severe injuries and resulting damages suffered by Plaintiff following ingestion of Defendants' diabetes and weight loss drugs, Mounjaro, Trulicity, and Ozempic (referred to herein collectively as "GLP-1 RA PRODUCTS"), which were defective and improperly marketed by Defendants Type 2 diabetes. In support thereof, Plaintiff alleges as follows:

**PARTIES**

1. At all relevant times hereto, Plaintiff, DANIEL G. WEBB, was a resident and citizen of Alsip, Cook County, Illinois.

2. Plaintiff was prescribed and took Ozempic (semaglutide) as directed by his healthcare providers in approximately November 2021.

3. Plaintiff was prescribed and took Trulicity (dulaglutide), an injectable prescription drug, as directed by his healthcare providers from approximately December 15, 2020, to September 7, 2024.

4. Plaintiff was prescribed and took Mounjaro (tirzepatide), an injectable prescription drug, as directed by his healthcare providers from September 7, 2024, to January 11, 2025.

5. Defendant, ELI LILLY AND COMPANY, is and at all relevant times has been an

Indiana corporation with its principal place of business at Lilly Corporate Center, 893 S. Delaware Street, Indianapolis, Indiana.

6. Defendant, LILLY USA, LLC, is and at all relevant times has been an Indiana limited liability company with its principal place of business at Lilly Corporate Center, 893 S. Delaware Street, Indianapolis, Indiana, with at least one member who is a resident and citizen of Indiana.

7. Defendants, ELI LILLY AND COMPANY and LILLY USA, LLC, are referred to collectively herein as "the ELI LILLY DEFENDANTS," "ELI LILLY," OR "LILLY."

8. In collaboration amongst themselves, as part of their business, and at all relevant times, the ELI LILLY DEFENDANTS designed, researched, manufactured, tested, labeled, advertised, promoted, marketed, sold, and/or distributed GLP-1 RA Products, including Mounjaro and Trulicity.

9. The active ingredient in Mounjaro is tirzepatide, which LILLY also markets as Zepbound. The active ingredient in Trulicity is dulaglutide.

10. As holder of the New Drug Application for Mounjaro, LILLY is responsible for communications with the FDA and associated regulatory authorities, reporting adverse events, label changes, post-market surveillance, and pharmacovigilance.

11. Defendant, NOVO NORDISK INC., is a Delaware corporation that has its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey, 08536.

12. Defendant NOVO NORDISK A/S is and at all relevant times has been a public limited liability company organized under the laws of Denmark with a principal place of business in Begsvaerd, Denmark.

13. Defendants, NOVO NORDISK INC.; NOVO NORDISK A/S; and its subsidiaries and affiliates named herein are collectively referred to as "the NOVO NORDISK DEFENDANTS" or "NOVO NORDISK".

14. Defendants, NOVO NORDISK INC AND NOVO NORDISK A/S., are identified on Ozempic's label.

15. Further, upon information and belief, the NOVO NORDISK DEFENDANTS also designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed Ozempic.

16. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS failed to warn prescribing healthcare providers and the end users of GLP-1 RA Products of the complications and devastating effects of which the Defendants knew or should have known, including NAION, which can result in blindness and permanent vision loss.

17. Further, upon information and belief, Defendants failed to warn healthcare providers of the need for vision screening prior to initiation of GLP-1 RA Products as well as continued ophthalmological monitoring of patients during their use of these drugs.

18. Upon information and belief, Defendants failed to warn the end users of GLP-1 RA Products of the complications and devastating effects of which the Defendants knew or should have known.

19. Upon information and belief, Defendants' marketing was deceptive and misleading about the true risks associated with the use of Defendants' GLP-1 RA Products; defects in these drugs rendered them unreasonably dangerous for patients, including Plaintiff (a condition that existed when the drugs left the control of the respective Defendants); the risks posed to patients including Plaintiff by these drugs outweighed their utility; and all of these risks were known or

should have been known to the Defendants.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which Plaintiff resides, which is Illinois.

21. This Court has personal jurisdiction over Defendants consistent with the United States Constitution and 735 ILCS 5/2-209 (Illinois's "long arm" statute), by virtue of Defendants' substantial, continuous, and systematic contacts with the State of Illinois.

## GENERAL ALLEGATIONS

### A. THE GLP-1 RA Class of Drugs

22. Various active ingredients fall within the GLP-1 RA class of drugs, including semaglutide (marketed by the NOVO NORDISK DEFENDANTS as Ozempic, Wegovy, and Rybelsus); tirzepatide (marketed by the LILLY DEFENDANTS as Mounjaro and Zepbound), and dulaglutide (marketed by the LILLY DEFENDANTS as Trulicity).

23. GLP-1 RA Products are treated as an established pharmacologic class ("EPC") by the FDA, and the drugs included in this class of drugs share similar mechanism of action, physiologic effects, and chemical structure.

24. Plaintiff and other users injected themselves with GLP-1 RA Products believing that they were doing something to promote their health when, in fact, it had the opposite effect

### B. "NAION and its Sequelae"

25. NAION is a medical condition involving damage to the optic nerve resulting in the loss of vision.

26. NAION is irreversible and permanent.

27. NAION falls within the category of an eye stroke.

28. NAION is untreatable and can lead to permanent blindness.

29. While the precise cause of NAION is unknown, the general belief among the medical community is that the condition is caused by insufficient blood supply or ischemia to the optic nerve.

30. Typically, NAION patients present with acute, painless vision loss in one eye that is often described as blurry or cloudy, while 8–12% of patients may have accompanied pain such as a headache or periocular pain.

31. Vision loss may occur over hours to days, but generally NAION patients notice vision loss or even total blindness upon waking in the morning.

32. Patients with NAION suffer from blurred or darkened vision obstructing their field of view, as well as loss of color vision and loss of contrast in vision.

33. After glaucoma, NAION is the second most common cause of blindness due to optic nerve damage.

34. Approximately 15% of patients who develop NAION in one eye eventually develop it in the other eye.

35. Many NAION patients cannot drive or have driving restrictions; cannot read or have trouble reading; and may be unable to continue in their line of employment.

### C. Defendants' Knowledge of the Risk

36. It has been known since at least 2016 that the human eye contains GLP-1 receptors.

37. Defendants conduct clinical trials and have access to case reports and medical literature that provide them with superior knowledge compared to the general public as to the potential risks of their medications.

38. Defendants knew or should have known of the causal association between the use of the GLP-1 RA Products and the risk of developing NAION and its sequelae, but they ignored it.

39. The FDA's Adverse Events Reporting System ("FAERS") shows multiple reports of "Optic Ischemic Neuropathy" reported in connection with the use of GLP-1 RA Products.

40. The earliest reported optic ischemic neuropathy event associated with any GLP-1 RA Products occurred in 2012, and the earliest associated with Ozempic (semaglutide) specifically was in 2019.

41. In the clinical trial "A Research Study to Compare Two Doses of Semaglutide Taken Once Weekly in people with Type 2 diabetes (SUSTAIN FORTE)," with results first submitted in August 2021, a participant developed optic ischemic neuropathy, which was categorized as a serious adverse event.

42. That serious adverse event occurred within the semaglutide 2.0 mg dosage group, comprised of 479 participants, which is significant given the low background incidence of NAION in the general population.

43. A meta-analysis of all clinical trials of GLP-1 RA drugs found that the overall rate of optic ischemic neuropathy was higher in the treatment group than in the control group — 5.6 versus 3.0 cases per 100,000 patient-years, respectively — nearly a doubling of the risk for GLP-1 RA drug users.

44. The authors of the aforementioned meta-analysis noted that optic ischemic neuropathy is rare and may have been underreported in clinical trials, leading to a lower estimated risk, and that "inappropriate use of drugs for inducing weight loss in moderately overweight patients with low cardiovascular risk could be associated with rare, but severe, adverse effects, possibly including NAION."

45. On July 3, 2024, JAMA Ophthalmology published "Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide," by Hathaway et al., involving 17,298 patients examined between December 1, 2017, and November 30, 2023.

46. Of the 710 Type 2 diabetic patients in that study, 194 were prescribed semaglutide and 516 were prescribed other non-GLP-1 RA medications; NAION occurred in 17 patients in the semaglutide cohort versus 6 in the non-GLP-1 RA cohort.

47. Kaplan-Meier survival analysis at 36 months in the JAMA Ophthalmology study showed a cumulative incidence of NAION of 8.9% (95% CI, 4.5%–13.1%) for the semaglutide cohort versus 1.8% (95% CI, 0%–3.5%) for the non-semaglutide cohort, with a hazard ratio of 4.28 (95% CI, 1.62–11.29; $P < .001$).

48. Of the 979 overweight or obese patients, 361 were prescribed semaglutide and 618 were prescribed other non-GLP-1 RA medications; NAION occurred in 20 patients in the semaglutide cohort versus 3 in the non-GLP-1 RA cohort, with a cumulative incidence at 36 months of 6.7% versus 0.8% and a hazard ratio of 7.64 (95% CI, 2.21–26.36; $P < .001$).

49. The authors of the JAMA study hypothesized that expression of the GLP-1 receptor in the optic nerve and GLP-1 RA-induced enhanced sympathetic nervous system activity might influence optic nerve head perfusion and potentially increase the risk of NAION.

50. On December 11, 2024, a Danish-Norwegian cohort study found an association between the use of semaglutide for Type 2 diabetes and the risk of NAION.

51. A Danish registry-based prospective cohort study identifying 424,152 patients diagnosed with Type 2 diabetes between December 1, 2018, and December 31, 2023, found that 106,454 of those patients were exposed to semaglutide and 67 developed NAION, concluding that use of semaglutide "more than doubles the risk of NAION, even when multiple other factors have been taken into account."

52. That study also observed that after the introduction of once-weekly semaglutide in Denmark in November 2018, the annual number of first-time NAION episodes reached an all-time high for the years 2019–2023.

53. As of January 17, 2025, the Pharmacovigilance Risk Assessment Committee ("PRAC") of the Danish Medicines Agency required Novo Nordisk to review and submit available data related to semaglutide and NAION, and PRAC will determine whether a label change is warranted or whether other risk minimization efforts should be pursued in the future.

54. A case series published by Katz et al., "Ophthalmic Complications Associated With the Antidiabetic Drugs Semaglutide and Tirzepatide," examined nine patients taking GLP-1 RA medications who experienced ophthalmologic complications, seven of whom developed NAION.

55. The Katz article included a report of a woman with Type 2 diabetes taking semaglutide with evidence of positive challenge and rechallenge. In particular, the morning after her first GLP-1 RA injection, this patient was reported as experiencing painful vision loss in her left eye and was diagnosed with bilateral optic nerve swelling. She then discontinued the medication and restarted it approximately two months later, after which she experienced painful vision loss in her right eye, with imaging consistent with NAION.

56. A study published April 7, 2025, analyzing FDA Adverse Event reports found that users of semaglutide showed "significantly higher" reports of vision impairment compared to other diabetes and weight loss medications.

**Defendants' Inadequate Warnings**

57. According to the Drugs@FDA website, the label for Mounjaro has been updated on at least sixteen occasions by the LILLY DEFENDANTS since 2022, with the most recent update on January 20, 2026.

58. Despite the fact that there are at least seventeen iterations of the Mounjaro label, the LILLY DEFENDANTS' labels have not contained **any** warning or any information whatsoever on the increased propensity of Mounjaro to cause NAION and permanent vision loss, such as the injury suffered by Plaintiff.

59. The labels for Ozempic (semaglutide) and the NOVO NORDISK DEFENDANTS' other GLP-1 RA Products were likewise inadequate because they did not warn or failed to adequately warn of all possible adverse side effects causally associated with the use of their GLP-1 RA Products, including the increased risks of NAION and its sequelae in patients including Plaintiff.

60. The labels for the GLP-1 RA Products for the LILLY DEFENDANTS as well as for the NOVO NORDISK DEFENDANTS were both further inadequate because they did not warn or adequately warn that the products had not been sufficiently or adequately tested for safety risks, including NAION, and did not accurately reflect the severity, duration, and permanence of such adverse effects.

61. The LILLY DEFENDANTS could have filed a "Changes Being Effected" ("CBE") supplement under Section 314.70(c) of the FDCA to make moderate changes to Mounjaro's label without any prior FDA approval.

62. Examples of moderate label changes that may be made via a CBE supplement include changes "to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction."

63. Both the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS failed to take any steps to warn the medical community, particularly healthcare providers within the ophthalmologic community and/or prescribing healthcare providers, that a baseline eye examination should be undertaken prior to starting a GLP-1 RA drug; monitoring patients while on the GLP-1 RA Products; and advising patients to cease use if they develop symptoms consistent with NAION.

64. Neither the LILLY DEFENDANTS nor the NOVO NORDISK DEFENDANTS have yet to issue any warnings or recommendations that patients taking the GLP-1 RA Products (including Mounjaro, Trulicity, and/or Ozempic users such as Plaintiff) undergo ophthalmological screening and monitoring.

65. Defendants downplayed nature, duration, extent, and seriousness of adverse events and failed to warn about NAION, which can result in blindness and permanent vision loss.

66. Defendants' efforts to conceal or minimize the risks associated with taking their respective GLP-1 RA Products were intended to create the impression that these were "miracle drugs."

67. Defendants had sole access to many of the material facts concerning the defective nature of the GLP-1 RA Products and their propensity to cause serious and dangerous side effects.

68. Defendants knew or should have known that Plaintiff, Plaintiff's healthcare providers, and the general medical community did not have the ability to determine the true facts, which were intentionally and/or negligently concealed and misrepresented by each and all of the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS.

**Plaintiff's Injuries and Reliance**

69. Through affirmative misrepresentations and omissions, the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS actively concealed from Plaintiff and his prescribing and treating healthcare providers the true and significant risks associated with the Defendants' respective GLP-1 RA Products.

70. In reliance upon the respective false and negligent misrepresentations and omissions made by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS,, Plaintiff's prescribing and treating healthcare providers were induced to, and did, prescribe to Plaintiff GLP-1 RA Products (including Mounjaro, Trulicity, and/or Ozempic) and failed to conduct baseline or recurring ophthalmological screening during Plaintiff's use of their respective drugs; thereby causing Plaintiff to endure severe and permanent injuries and associated losses and damages.

71. As a result of his use of Trulicity, Ozempic and Mounjaro, Plaintiff developed non-arteritic anterior ischemic optic neuropathy (also known as "NAION") and suffered severe physical and emotional injuries and radical changes to his lifestyle due to his severe loss of sight.

72. Plaintiff and his prescribing and treating healthcare providers had no way to determine the truth behind the inadequacies of Defendants' respective warnings, and their reliance upon the respective warnings provided by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS for their respective GLP-1 RA Products ingested by Plaintiff were reasonable.

73. Plaintiff's prescribing and treating healthcare providers had no way to determine the truth behind the inadequacies of the warnings provided by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS for their respective GLP-1 RA Products that were ingested by Plaintiff, and the reliance of these prescribing and treating healthcare providers upon the LILLY DEFENDANTS' and NOVO NORDISK DEFENDANTS' warnings relating to their respective GLP-1 RA Products ingested by Plaintiff was reasonable.

74. Had Plaintiff and/or Plaintiff's prescribing and treating healthcare providers been properly warned of the significant risks of NAION associated with the GLP-1 RA Products, Plaintiff would not have elected to begin or continue those medications and would have chosen a different option for the treatment of his Type 2 diabetes.

75. Reasonable, safer alternative treatments were available to Plaintiff and/or Plaintiff's prescribing and treating healthcare providers for the treatment of Plaintiff's condition.

76. As a proximate result of the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS' various acts and omissions as alleged herein relating to each of their respective GLP-1 RA Products, Plaintiff was prescribed GLP-1 RA Products, ingested those drugs for a long period of time, suffered a permanent injury to his vision as a result of ingesting these drugs, and was diagnosed with NAION and irreparable vision loss.

77. As a result of his injuries, Plaintiff has suffered severe, permanent bodily injuries; endured substantial physical, mental, and emotional pain and suffering in the past (and such pain and suffering is likely to continue into the future); has incurred significant expenses for medical care and treatment, which are continuing and has suffered permanent injuries, emotional distress, loss of earnings, loss of ability to earn money, and other economic losses, including past and future medical expenses.

78. The injuries, losses, and damages are either permanent and/or continuing, and Plaintiff will likely suffer these losses and damages in the future.

**EQUITABLE TOLLING OF STATUTES OF LIMITATIONS**

79. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS are estopped from relying on the statute of limitations defense because each and all of the Defendants actively concealed information concerning known risks, side effects, and defects in their respective GLP-1 RA Products, including the Ozempic, Trulicity, and Mounjaro ingested by Plaintiff

80. Instead of revealing such information to the FDA or the public, Defendants have continued to represent the GLP-1 RA Products as safe for their intended use.

81. Defendants are and were under a continuing duty to disclose the true character, quality, and nature of the risks and dangers associated with their respective GLP-1 RA Products.

82. Because of the purposeful and fraudulent concealment of material information by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANT concerning the true character, quality, and nature of the risks for their respective GLP-1 RA Products, Defendants are estopped from relying on any statute of limitations defense in this action.

**COUNT I – STRICT LIABILITY FOR FAILURE TO WARN**

83. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

84. The GLP-1 RA Products ingested by Plaintiff herein are products within the meaning of applicable products liability law.

85. At all relevant times, Defendants engaged in the business of researching, testing, developing, manufacturing, labeling, marketing, selling, inspecting, handling, storing, distributing,

and/or promoting their respective GLP-1 RA Products, and placed these drugs into the stream of commerce in a defective and unreasonably dangerous condition.

86. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS, as holders of the applicable New Drug Applications for each of the GLP-1 RA Products ingested by Plaintiff, are responsible for communications to the FDA and associated regulatory authorities; reporting adverse events; label changes; post-market surveillance; and pharmacovigilance.

87. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS, as manufacturers, distributors, and marketers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field.

88. Plaintiff did not have the same knowledge as Defendants, and no adequate warning, clinically relevant information, or data was communicated to Plaintiff and/or to Plaintiff's prescribing and treating healthcare providers regarding the GLP-1 RA Products ingested by Plaintiff. Each and all of the Defendants had a duty to provide adequate warnings and instructions, and a continuing duty to provide consumers, including Plaintiff, and his prescribing and treating healthcare providers with warnings and other clinically relevant information and data regarding the risks and dangers associated with the GLP-1 RA Products ingested by Plaintiff, as such information became available.

89. Each and all of the Defendants knew or should have known that the GLP-1 RA Products ingested by Plaintiff created a risk of serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

90. Despite this knowledge, each and all the Defendants failed and neglected to issue adequate warnings that the GLP-1 RA Products ingested by Plaintiff could cause serious and potentially irreversible vision issues, optic nerve damage, blindness, vision loss, and NAION

91. Further, each and all Defendants failed to issue any recommendations for ophthalmological monitoring and vision screening of Plaintiff and other patients prior to first use and during the entire course of treatment with GLP-1 RA Products.

92. Also, each and all the Defendants failed to provide adequate post-marketing warnings and instructions with regard to their respective GLP-1 RA Products, ingested by Plaintiff after each and all the Defendants knew or should have known of the significant risks posed to patients, including Plaintiff.

93. These foreseeable risks of harm could have been reduced or avoided by Plaintiff, his prescribing and treating healthcare providers, and other patients had each and all the Defendants provided reasonable instructions and/or warnings.

94. As a direct and proximate result of the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS' wrongful conduct as alleged herein, Plaintiff suffered bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life' expense of medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions.

95. These injuries, losses, and damages are either permanent and/or continuing, and Plaintiff will likely suffer these injuries, losses, and damages in the future.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; for such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

**COUNT II -**
**STRICT LIABILITY FOR DESIGN DEFECT**

96. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

97. The GLP-1 RA Products ingested by Plaintiff were designed by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS in such a way that their respective GLP-1 RA Products pose an unreasonable risk of serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes and the Defendants' respective drugs were kept on the market despite being in a defective condition.

98. The GLP-1 RA Products supplied to Plaintiff were defective in design or formulation and unreasonably dangerous when it left the hands of the Defendants, and it reached the users and consumers of the products, including Plaintiff, without substation in the condition in which it was sold.

99. The GLP-1 RA Products were defective or formulation in that:

a. Defendants knew or should have known of the dangers associated with the GLP-1 RA products, but failed to use ordinary care in designing, researching, manufacturing, testing, advertising, promoting, marketing, selling and/or distributing GLP-1 RA products;

b. The benefits of GLP-1 RA products were greatly outweighed by the foreseeable risks associated with the design or formulation of GLP-1 RA products, including NAION and its sequelae;

c. There was a safer, economically feasible alternative design or formulation for GLP-1 RA products that Defendants could have used;

d. The design or formulation of GLP-1 RA products failed to properly minimize the known adverse effects to the gastrointestinal and immune systems;

e. The design or formulation of GLP-1 RA products failed to counteract the known adverse effects on the gastrointestinal and immune systems; and

f. The design or formulation of GLP-1 RA products failed to take into consideration the proper dosage that could avoid NAION and its sequelae.

100. The GLP-1 RA Products ingested by Plaintiff did in fact cause serious and potentially irreversible vision issues, severe optic nerve damage, sudden blindness, and NAION in one or both eyes.

101. The alleged benefits of the GLP-1 RA Products ingested by Plaintiff did not outweigh the risks posed by the respective Defendants' GLP-1 RA Products.

102. The designs of the respective Defendants' GLP-1 RA Products ingested by Plaintiff were more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

103. Further, the respective Defendants' GLP-1 RA Products ingested by Plaintiff were more dangerous than other similar drugs available for the treatment of Plaintiff's medical conditions

104. Each and all the Defendants acted unreasonably in failing to adopt safer designs that were practical, feasible, and otherwise a reasonable alternative design or formulation — including alternate dosing and reduced exposure — that would have prevented or substantially reduced the risk of harm to patients, including Plaintiff herein, without substantially impairing the usefulness, practicality, and/or overall desirability of the Defendants' respective GLP-1 RA Products.

105. The GLP-1 RA Products ingested by Plaintiff are defective and unreasonably dangerous to Plaintiff and other patients and would have been unreasonably dangerous to Plaintiff and other patients even if each and all the Defendants had exercised all possible care in the preparation and sale of Defendants' respective GLP-1 RA Products.

106. As a direct and proximate result of the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS' wrongful conduct and defective design of their respective GLP-1 RA Products (as further alleged herein), Plaintiff suffered bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past and future medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions.

107. As a further direct and proximate result of Defendants' conduct and defective design of their respective GLP-1 RA Products (as further alleged herein), Plaintiff suffered the injuries and damages described above, which are either permanent or continuing.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; for such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

**COUNT III –**
**NEGLIGENT FAILURE TO WARN**

108. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

109. Defendants had a duty to exercise reasonable care in the design; research; testing; manufacture; marketing; supply; promotion; advertising; packaging; sale; and distribution of the Defendants' respective GLP-1 RA Products into the stream of commerce, including a duty to assure that the products would not cause users, including Plaintiff herein, to suffer risks of serious and potentially irreversible vision issues, sudden loss of vision or blindness, severe optic nerve

danger, and/or NAION (with its sequelae) in one or both eyes due Defendants' respective GLP-1 RA Products being unreasonably dangerous.

110. Each and all the Defendants knew or had reason to know of facts establishing that their respective GLP-1 RA Products could cause serious and potentially irreversible vision issues, sudden loss of vision or blindness, severe optic nerve danger, and/or NAION (with its sequelae) in one or both eyes and each and all the Defendants failed to warn of these risks.

111. At all relevant times, the labels for the Defendants' respective GLP-1 RA Products were inadequate because the labels utilized by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS did not warn at all and/or inadequately warned of all possible adverse side effects associated with ingestion of their respective GLP-1 RA Products, including (but not limited to) serious and potentially irreversible vision issues, sudden loss of vision or blindness, severe optic nerve danger, and/or NAION (with its sequelae) in one or both eyes.

112. At all relevant times, the labels of the Defendants' respective GLP-1 RA Products were inadequate because the labels utilized by the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS did not warn at all or failed to adequately warn that the products had not been sufficiently and/or adequately tested for safety risks posed to Plaintiff herein and other patients, including (but not limited to) serious and potentially irreversible vision issues, sudden loss of vision or blindness, severe optic nerve danger, and/or NAION (with its sequelae) in one or both eyes.

113. At all relevant times, the labels of the Defendants' respective GLP-1 RA Products were also inadequate because they did not warn at all and/or failed to adequately warn that a baseline eye examination and ongoing ophthalmological monitoring while patients were on GLP-

1 RA therapy are necessary to minimize or prevent serious and permanent injuries, including the losses, damages, and injuries sustained by Plaintiff. .

114. Communications made by each and all the Defendants to Plaintiff and/or Plaintiff's prescribing and treating healthcare providers were inadequate for the same reasons.

115. Defendants' respective failures to warn at all and/or failures to adequately warn prevented Plaintiff and/or his prescribing and treating healthcare providers from conducting a proper assessment of the risks versus the benefits of using the Defendants' respective GLP-1 RA Products for the treatment of Plaintiff's medical conditions.

116. Had Plaintiff and/or his prescribing and treating healthcare providers been properly warned by each and all Defendants, Plaintiff would not have elected to initiate treatment with the Defendants' respective GLP-1 RA Products and/or to continue use of the Defendants' respective GLP-1 RA Products, as reasonable and safer alternative treatments were available for Plaintiff's medical conditions.

117. As a direct and proximate result of the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS' wrongful conduct and Defendants' failure to warn at all and/or the provision of inadequate warnings regarding the benefits and safety versus risks of their defective respective GLP-1 RA Products, Plaintiff suffered bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past and future medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions.

118. As a further direct and proximate result of Defendants' wrongful conduct and Defendants' failure to warn at all and/or the provision of inadequate warnings regarding the benefits and safety versus risks of their respective GLP-1 RA Products (as further alleged herein),

Plaintiff suffered the injuries and damages described above, which are either permanent or continuing.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; for such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

## COUNT IV -
## NEGLIGENCE

119. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

120. At all relevant times, each and all the Defendants had a duty to exercise reasonable care in the design ;creation; development; research; testing; formulation; manufacturing; marketing; supply; labeling; promotion; advertising; packaging; sale; storage; transport; and distribution of their respective GLP-1 RA Products ingested by Plaintiff, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that did not cause users to suffer unreasonable, dangerous side effects without an adequate warning. At all relevant times, each and all the Defendants knew, or in the exercise of reasonable care should have known, of the hazards and dangers associated with Defendants' respective GLP-1 RA Products and, specifically, that the use of these drugs could cause a risk of serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

121. In disregard of their duties, each and all the Defendants committed one or more of the following negligent acts or omissions:

a. Designing; creating; developing; researching; testing; formulating; manufacturing; marketing; producing; retailing; supplying; labeling; promoting; overpromoting; advertising; packaging; selling; storing; transporting; or distributing their respective GLP-1 RA Products without thorough and/or adequate pre- and post-market testing of the products;

b. Designing; creating; developing; researching; testing; formulating; manufacturing; marketing; supplying; labeling; promoting; overpromoting; advertising; packaging; selling; storing; transporting; or distributing their respective GLP-1 RA Products while negligently and intentionally concealing and failing to disclose clinical data which demonstrated the risk of serious harm associated with the use of Ozempic, Mounjaro, Trulicity, and other GLP-1 RA Products;

c. Failing to undertake sufficient studies and conduct necessary tests and research to determine whether their respective GLP-1 RA Products were safe for their intended use;

d. Failing to disclose and warn the medical community and consumers, including Plaintiff and his prescribing and treating healthcare providers, of the product defects in Defendants' respective GLP-1 RA Products that each and all the Defendants knew or had reason to know rendered GLP-1 RA Products unreasonably unsafe and unfit for use by reason of the product defects and risk of harm to its users, including Plaintiff herein;

e. Failing to warn Plaintiff, his prescribing and treating healthcare providers, the larger medical community, and other patients , and consumers that the risks of serious harm from use of Ozempic, Mounjaro, Trulicity, and/or other GLP-1 RA Products was unreasonable and that safer and effective alternative products and treatments were available to Plaintiff and other consumers; Failing to provide adequate instructions, guidelines, and safety precautions to those persons whom it was reasonably foreseeable would use Ozempic, Mounjaro, Trulicity, and/or other GLP-1 RA Products; Advertising, marketing, and recommending the use of Ozempic, Mounjaro, Trulicity, and/or other GLP-1 RA Products while concealing and failing to disclose or warn of the dangers known by each and all the Defendants to be connected with, and inherent in, the use of these products;

f. Representing that GLP-1 RA Products were safe for their intended uses when in fact each and all the Defendants knew or should have known that their respective GLP-1 RA Products were not safe for their intended purposes;

g. Continuing to manufacture and sell GLP-1 RA Products with the knowledge that GLP-1 RA Products are unreasonably unsafe and dangerous;

h. Failing to ensure that Defendants' respective GLP-1 RA Products were accompanied by proper and accurate warnings about requiring baseline visual examinations prior to initiation of GLP-1 RA therapy and regular eye examinations and ophthalmologic monitoring while using the drugs;

i. Failing to design and manufacture GLP-1 RA Products that were reasonably safe for their intended purposes in accordance with objective safety standards;

j. Failing to ensure that their respective GLP-1 RA Products were accompanied by proper and accurate warnings that their use created a risk of serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes; and

k. Failing to conduct adequate testing, including pre-clinical and clinical testing, and post-marketing surveillance to determine the safety of Defendants' respective GLP-1 RA Products.

122. As a direct and proximate result of Defendant's conduct, including the inadequate warnings, lack of adequate testing and research, and the defective and dangerous condition of Defendants' respective GLP-1 RA Products, Plaintiff suffered bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past and future medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions.

123. These injuries, damage, and losses are either permanent or continuing, and Plaintiff will likely suffer additional damages and losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; for such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

**COUNT V –**
**NEGLIGENCE - DESIGN DEFECT**

124. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

125. Defendants are liable to Plaintiff for the injuries, losses, and damages sustained due to Defendants' negligent design and formulation of the Defendants' respective GLP-1 RA Products that were ingested by Plaintiff.

126. At all relevant times, Defendants owed a duty to consumers, including Plaintiff, and his prescribing and treating healthcare providers to assess, manage, and communicate the risks, dangers, and adverse effects of the Defendants' respective GLP-1 RA Products.

127. Each and all the Defendants breached their respective duties by, among other things:

a. Failing to use ordinary care in designing, testing, and manufacturing their respective GLP-1 RA Products;
b. Failing to properly minimize adverse effects;
c. Designing products whose benefits were greatly outweighed by the risk of a serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes;
d. Designing the products without considering proper dosage to avoid NAION; and
e. Creating a defective design whose foreseeable risks exceeded its benefits.

128. Given their lack of efficacy and increased safety risks, the Defendants' respective GLP-1 RA Products did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff, and/or his prescribing and treating healthcare providers.

129. Despite Defendants' knowledge of the foreseeable risks and unreasonably dangerous nature of their respective GLP-1 RA Products, each and all the Defendants designed and brought their respective drugs to market and continued to market them to patients, including Plaintiff, and Plaintiff's prescribing and treating healthcare providers (as well as the medical community at large) when safer alternatives were available, including, but not limited to, alternate dosing and reduced exposure.

130. As a direct and proximate result of the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS' wrongful conduct and negligent acts regarding their respective GLP-1 RA Products (as further alleged herein), Plaintiff suffered bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past and future medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; for such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

## COUNT VI -
## NEGLIGENT MISREPRESENTATION AND MARKETING

131. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

132. At all relevant times, Defendants negligently provided Plaintiff, Plaintiff's prescribing and treating healthcare providers, and the general medical community and patients with false; information; incorrect information; and/or omitted, concealed, and/or failed to disclose material information concerning their respective GLP-1 RA Products that were ingested by Plaintiff, including misrepresentations regarding their respective drugs' safety and known risks

133. The information distributed by each and all the Defendants to the public, the medical community, Plaintiff, and Plaintiff's prescribing and treating healthcare providers — including advertising campaigns, labeling materials, print advertisements, commercial media, and marketing — was false, misleading, and/or contained omissions, concealment , and/or failure to disclose material information and the truth about the dangers of the Defendants' respective GLP-1 RA Products, including those ingested by Plaintiff herein.

134. Each and all the Defendants had a duty to accurately and truthfully represent and disclose the known risks of their respective GLP-1 RA Products, including, but not limited to, a risk of serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

135. Each and all the Defendants made continued omissions in the labeling of the GLP-1 RA Products, promoting them as safe and effective while failing to warn of their propensity to cause a risk of serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

136. Each and all the Defendants made additional misrepresentations beyond the product labeling by representing that their respective GLP-1 RA Products were safe and effective

treatments for Type 2 diabetes, weight loss, and/or other health benefits and conditions; that their respective GLP-1 RA Products had only minimal risks; and each and all the Defendants misrepresented and overstated the benefits of their respective GLP-1 RA Products without properly advising of the known risks and side effects.

137. In reliance upon these false, deceptive, and/or negligent misrepresentations, omissions, concealments, overpromotion, and/or improper marketing, Plaintiff and Plaintiff's prescribing and treating healthcare providers were induced to, and did in fact, use and prescribe their respective GLP-1 RA Products ingested by Plaintiff, thereby causing Plaintiff to endure severe and permanent injuries including, but not limited to, serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

138. Defendants knew or should have known with the exercise of reasonable care that Plaintiff, his prescribing and treating healthcare providers, and the general medical community and patient population did not have the ability to determine the true facts regarding the risks versus benefits, safety, and efficacy of Defendants' respective GLP-1 RA Products which Defendants intentionally and/or negligently concealed and/or misrepresented.

139. Plaintiff and his prescribing and treating healthcare providers would not have used and/or prescribed the Defendants' respective GLP-1 RA Products had the true facts not been concealed, misrepresented, overpromoted, and/or overstated by each and all the Defendants.

140. The reliance of Plaintiff and/or Plaintiff's prescribing and treating healthcare providers on the foregoing misrepresentations, false statements, concealments, overpromotion, improper marketing, and/or omissions was the direct and proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

**COUNT VII –**
**BREACH OF EXPRESS WARRANTIES**

141. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

142. Each and all the Defendants expressly warranted to Plaintiff, Plaintiff's prescribing and treating healthcare providers, and the general medical community and public — by and through each and all the Defendants and/or their authorized agents and/or sales representatives in publications, labeling, the internet, advertisements, promotional materials, and/or other communications intended for healthcare providers, patients (including Plaintiff), and/or the general public — that the Defendants' respective GLP-1 RA Products were safe, effective, and/or fit and proper for their intended uses.

143. At all relevant times, Defendants expressly warranted that their respective GLP-1 RA Products were safe and effective as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus and that their effectiveness outweighed any potential dangers or risks.

144. The Defendants' respective GLP-1 RA Products ingested by Plaintiff materially failed to conform to these representations by each and all the Defendants.

145. At the time the Defendants’ respective GLP-1 RA Products ultimately ingested by Plaintiff left the respective Defendants' control, the drugs did not conform to each and all of the respective Defendants' express warranties because the drugs were causally associated with an increased risk of patients developing serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

146. These express warranties were made with the intent to induce Plaintiff to use the Defendants’ respective GLP-1 RA Products and to induce Plaintiff’s prescribing healthcare providers to prescribe them and for Plaintiff’s treating healthcare providers to recommend that he continuing taking the drugs..

147. Plaintiff and Plaintiff's prescribing and treating healthcare providers justifiably relied on each and all the Defendants' representations regarding the safety of their respective GLP-1 RA Products, and those representations became part of the basis of the bargain between the parties.

148. Plaintiff purchased and used the GLP-1 RA Products without knowing that they are not safe and well tolerated, but that they instead cause significant and irreparable vision loss and eye damage.

149. As a result of the foregoing breaches, Plaintiff suffered serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

150. Further, as a result of the foregoing breaches, Plaintiff sustained bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past and future medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

**COUNT VIII –**
**BREACH OF IMPLIED WARRANTIES**

151. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

152. At all relevant times, Defendants impliedly warranted to Plaintiff, Plaintiff's prescribing and treating healthcare providers, and the medical and general community that the Defendants' respective GLP-1 RA Products, which Defendants manufactured, distributed, and sold, and which Plaintiff purchased and used, were of merchantable quality and safe and fit for the common, ordinary, and/or intended uses for which they were sold.

153. However, Defendants' respective GLP-1 RA Products that were sold to Plaintiff and ingested by Plaintiff were not fit for their ordinary purposes of helping to improve blood sugar (glucose) in patients.

154. The Defendants' respective GLP-1 RA Products that were sold to and ingested by Plaintiff would not pass without objection in the trade; are not of fair average quality; are not fit for the ordinary purposes for which they are used; were not adequately contained, packaged, and labeled; and failed to conform to the promises or affirmations of fact made on the container and/or label.

155. At all relevant times, each and all the Defendants knew or should have known that their respective GLP-1 RA Products that were sold to and ingested by Plaintiff were unreasonably

dangerous because of the increased risk serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes, especially when used in the form and manner provided by each and all the Defendants.

156. Each and all the Defendants' breaches of the implied warranties of merchantability were a substantial factor in causing Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, and costs, in an as yet unliquidated sum in excess of $75,000.00; such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

**COUNT IX –**
**VIOLATION OF UNFAIR TRADE PRACTICES / CONSUMER FRAUD ACT, AND/OR PA CONSUMER PROTECTION ACT;**
**IL CONSUMER FRAUD AND DECEPTIVE ACT**

157. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

158. Plaintiff purchased and used Ozempic, Trulicity, and Mounjaro for personal use and therefore suffered ascertainable losses as a result of each and all the Defendants' actions in violation of Pennsylvania Unfair Trade Practices/Consumer Fraud Act (UTPCPL), 73 P.S. Sect. 201-1, *et seq.* and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* and Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*

159. Had Defendant not made affirmative misrepresentations, material omissions, and engaged in the deceptive conduct described herein, Plaintiff would not have purchased Ozempic, Trulicity and Mounjaro and would not have incurred damages.

160. Defendants engaged in wrongful and deceitful conduct while at the same time obtaining, under false pretenses, money from Plaintiff that would not have been paid had each and all the Defendants not engaged in unfair and deceptive conduct.

161. Despite knowing the falsity and misleading nature of their claims and representations, Defendants engaged in unconscionable commercial practices, deception, fraud, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts relative to the safety and efficacy of Ozempic, Trulicity, Mounjaro, and other GLP-1 RA Products.

162. Defendants intended such actions to mislead patients (including Plaintiff), prescribing and treating healthcare providers (including Plaintiff's healthcare providers), and the general public with respect to the safety and efficacy of Ozempic, Trulicity, Mounjaro, and other GLP-1 RA Products and to alter the ability of patients and doctors to weigh the true risks and benefits of GLP-1 RA Products versus other non-GLP 1 drugs and other medical treatment options.

163. Such actions did, in fact, mislead patients, healthcare providers, and the general public, including Plaintiff, with respect to the safety and efficacy of Ozempic, Trulicity, Mounjaro, and other GLP-1 RA Products.

164. Defendants had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of Ozempic, Trulicity, and Mounjaro.

165. The deceptive, unconscionable, and/or fraudulent representations and material omissions by the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS to patients, healthcare providers, and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of Pennsylvania Unfair Trade Practices/Consumer Fraud Act, 73 P.S.

Sect. 201-1, *et seq.,*.and the Illinois Consume Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

166. As a direct and proximate result of the LILLY DEFENDANTS' and the NOVO NORDISK DEFENDANTS' wrongful conduct (including the inadequate warnings, dilution or lack of necessary safety information, lack of adequate testing and research, and the defective and dangerous nature of Ozempic, Trulicity, and Mounjaro, Plaintiff suffered bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past and future medical and nursing care and treatment; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions. These injuries, losses, and/or damages are either permanent or continuing.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00; such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

## COUNT X
## PUNITIVE DAMAGES

167. Plaintiff incorporates by reference each preceding and succeeding paragraph as set forth fully at length herein.

168. The acts and omissions of the LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS described herein were oppressive, fraudulent, perpetuated with malice, and/or were done with advance knowledge and appreciation of the safety risks posed to patients (including Plaintiff herein and the serious and unreasonable risk of NAION and blindness) and acted with a conscious disregard of the safety of others including the intentional decision to not

disclose and/or adequately warn patients and prescribing and treating healthcare providers of vision-related safety risks associated with their GLP-1 RA Products as well as the need for ophthalmological monitoring, and/or ratification by the Defendants' respective officers, directors, and/or managing agents.

169. Further, each of the Defendants' actions amounted to actual malice or reckless indifference to the likelihood of harm associated with their acts, omissions, and wrongful conduct.

170. Each of the Defendants demonstrated wrongful conduct that was willful, wanton, reckless, and outrageous and resulted in injuries, losses, and damages for Plaintiff.

171. Each of the Defendants sold their respective GLP-1 RA Products to Plaintiff and other consumers throughout the United States despite their knowledge that these products can cause serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

172. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS misled both the medical community and the public, including Plaintiff and his prescribing and treating healthcare providers, by making false representations about the safety and effectiveness of Ozempic, Trulicity, Mounjaro, and other GLP-1 RA Products and by failing to provide adequate instructions concerning use of their respective GLP-1 drugs.

173. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS downplayed, understated, and/or disregarded their knowledge of the serious and permanent side effects and risks associated with the use of GLP-1 RA Products despite available information demonstrating that the drugs could cause serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.

174. The LILLY DEFENDANTS and the NOVO NORDISK DEFENDANTS were or should have been in possession of evidence demonstrating that GLP-1 RA use could cause serious and potentially irreversible vision issues, sudden vision loss or blindness, severe optic nerve damage, and/or NAION in one or both eyes.. Nevertheless, each and all the Defendants continue to market Ozempic, Trulicity, Mounjaro, and other GLP-1 RA Products by providing false and misleading information with regard to the drugs respective risks, safety, benefits, and efficacy.

175. Nevertheless, each and all the Defendants continue to market Ozempic, Trulicity, Mounjaro, and the other GLP-1 RA Products by providing false and misleading information regarding their respective risks, safety, benefits, and efficacy.

176. Each and all the Defendants failed to provide warnings that would have dissuaded healthcare professionals from prescribing the Ozempic, Trulicity, Mounjaro, and their other GLP-1 RA Products, thus preventing healthcare providers including Plaintiff's prescribing healthcare providers, and consumers, including Plaintiff, from weighing the true risks of the drugs against the purported benefits.

177. Each and all the Defendants' respective actions were performed willfully, intentionally, wantonly, and with reckless disregard for the rights of Plaintiff and the public, and with knowing, conscious, and deliberate disregard for the rights and safety of consumers.

178. Plaintiff's injuries, losses, and damages are severe, permanent, and will continue into the future.

179. Consequently, each and all the Defendants are liable for punitive damages in an amount to be determined by a jury.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in

excess of $75,000.00; such other relief as this Court deems just; and for a trial by jury on all issues so triable as a matter of right.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS

180. Each and all the Defendants are estopped from relying on the statute of limitations defense because each and all the Defendants actively concealed information concerning known risks, side effects, and defects in Ozempic, Trulicity, and Mounjaro And other GLP-1 RA Products. Instead of revealing such information to the FDA, the medical community, or the public, each and all the Defendants have instead continued to represent that GLP-1 RA Products are safe for their intended uses.

181. Each and all the Defendants are and were under a continuing duty to disclose the true character, quality, safety profile, efficacy, and nature of risks and dangers associated Ozempic, Trulicity, and/or Mounjaro . Because of each and all the Defendants purposeful and fraudulent concealment of material information concerning the true character, quality, safety profile, efficacy, and nature of risks and dangers of their respective GLP-1 RA Products, each and all the Defendants are estopped from relying on any statute of limitations defense with regard to the claims of Plaintiff herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein, and prays for judgment in Plaintiff's favor and against each and all the Defendants herein for a monetary award sufficient to compensate Plaintiff for

(a) compensatory damages for Plaintiff's bodily injuries and resulting pain and suffering; disability; mental anguish; loss of capacity for the enjoyment of life; expenses for past

and future medical treatment and monitoring and nursing care; loss of earnings; loss of the ability to earn money; other economic losses; and aggravation of previously existing conditions together with interest and costs;

(b) exemplary and punitive damages in an amount sufficient to punish each and all the Defendants and deter future similar conduct due to its wanton, willful, fraudulent, and reckless conduct and demonstration of a complete disregard and reckless indifference for the safety and welfare of the general public and of Plaintiff;

(c) pre-judgment and post-judgment interest;

(d) costs of these proceedings, including court costs, filing fees, and other litigation expenses;

(e) attorneys' fees to the extent permitted by law; and (6) any other relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all the triable issues within this pleading.

Dated: November 10, 2026.

*/s/ C. Calvin Warriner III*
C. Calvin Warriner III, Esq. (FL Bar #374131)
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Tel: (561)-686-6300
Fax: (561) 383-9498
ccw@searcylaw.com

***Attorney for Plaintiff***